Jessie **VALLEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 04–99–00207–CR to
04–99–00209–CR.

Court of Appeals of Texas,
San Antonio.

June 28, 2000.

Jim Greenfield, San Antonio, for Appellant.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice ALMA L. LÓPEZ, Justice PAUL W. GREEN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

In each of these appeals, Jessie Vallez appeals the trial court's second amended nunc pro tunc judgment. In his sole point of error, Vallez contends that the trial court erred in entering the unfavorable nunc pro tunc judgments without affording him a hearing and legal counsel. We sustain Vallez's point of error and reverse the second amended nunc pro tunc judgments.

### PROCEDURAL HISTORY

Vallez was indicted for three separate offenses. In trial court cause number 90–CR–1302 (appeal number 99–207–CR), Vallez was indicted on February 5, 1990, for possession of heroin on or about December 20, 1989. In trial court cause number 90–CR–4973 (appeal number 99–208–CR), Vallez was indicted on July 31, 1990, for delivery of heroin on or about December 19, 1989. In trial court cause number 90–CR–4974 (appeal number 99–209–CR), Vallez was indicted on July 31, 1990, for delivery of cocaine on or about April 24, 1990.

Vallez pled guilty to all three offenses. Separate plea papers were signed in each cause; however, the plea papers were signed on the same date, and the State's punishment recommendation and Vallez's requested punishment were the same in each cause. The State recommended twelve years imprisonment and a $1,000 fine for each cause, and Vallez requested

ten years imprisonment and probation. Vallez's pleas were heard the same day, March 19, 1991, and punishment was imposed in each cause on the same day, April 18, 1991. Vallez was sentenced to five years imprisonment and a $500 fine for each cause. The sentence was suspended in each cause, and Vallez was placed on ten years probation. Our record does not contain a reporter's record from the plea proceedings. Judge Priest presided over the plea proceedings and entered the 1991 judgments.

On July 7, 1997, the State filed a separate motion to revoke probation in each cause, alleging that Vallez violated the first condition of his probation when he was convicted of possession with intent to distribute heroin in federal court cause number SA96CR297(7). The motions were heard on the same day. Vallez pled true to the allegation. Judge Angelini sentenced Vallez to ten years imprisonment in each cause, stating, "Sentence him to ten years at the Texas Department of Corrections in each one of these cases, run all these cases concurrent, and run it concurrent with SA96CR297(7)." The judgment in each cause reflects that the sentences are to run concurrently.

On May 14, 1998, Vallez sent a request for a nunc pro tunc order to the trial court. Vallez's request states that the offenses were part of a single common scheme or plan. His request notes that the three causes were set for trial and sentencing on the same day. Although the request acknowledges that no formal order of consolidation was given, Vallez states that his understanding that the cases were consolidated was the reason he agreed to plead true to the allegation. The request notes that the ambiguity of whether the cases were formally consolidated could factor heavily against Vallez in determining whether certain rehabilitation programs would be made available to him while in federal custody and in the scoring of classification and criminal history points.

In response to this request, Judge Angelini entered a nunc pro tunc judgment on May 28, 1998, stating that each sentence was to run concurrent with the other two causes and the federal cause. The nunc pro tunc judgment further states, "It is further ordered that the defendant participate in the therapuetic [sic] community program and cases 90CR4973, 90CR4974 & 90CR1302 were/are consolidated for plea and sentencing."

Sometime after the nunc pro tunc judgment was entered, Vallez filed a motion in federal court, alleging that he should not have been sentenced as a career offender. On February 11, 1999, Judge Primomo issued a Second Memorandum and Recommendation addressing the motion. Judge Primomo agreed that Vallez was not qualified to be sentenced as a career offender and recommended that the motion to vacate Vallez's sentence be granted. The Second Memorandum and Recommendation explains that in calculating Vallez's total criminal history points for sentencing purposes, the probation officer found that Vallez was a career offender because of his convictions in 90CR4973 and 90CR4974. This raised Vallez's criminal history points from 21 to 34. The points were then reduced for acceptance of responsibility to 31. Whether based on his total criminal history points or because he was a career offender, Vallez's criminal history category was determined to be a IV, with a range of imprisonment of 188 to 255 months. The federal court then followed the prosecutor's recommendation and sentenced Vallez to 120 months. If the state convictions were consolidated, making them related cases, the range of imprisonment would have been 57 to 71 months.

Judge Primomo noted the arguments asserted by the government in opposition to Vallez's motion. First, the government argued that the trial court's ministerial action in entering a nunc pro tunc judgment did not constitute a consolidation. Judge Primomo responded that the trial court was not duty bound to order the consolida-

tion, and the trial court's decision to execute the amended judgments was not a ministerial action. Second, the government argued that the consolidation order was ineffective because it was not prompted by a motion by the state. Judge Primomo responded that the government failed to cite any authority holding that a consolidation order entered without a state's motion is ineffectual, and Judge Primomo was unable to find any authority that would make the consolidation void on that basis. The government argued that the consolidation order was obtained through deception. Judge Primomo responded that nothing in Vallez's request was misleading. Vallez's request clearly stated the reason he desired the nunc pro tunc consolidation. Since the trial court was not compelled to consolidate the cases through a nunc pro tunc judgment, Judge Primomo asserted that the decision to do so reflects the trial court's judgment that the cases should have been consolidated in 1991, when the judgments were initially entered.

On February 19, 1999, Judge Primomo's Second Memorandum and Recommendation were presented to Judge Prado for consideration. Judge Prado accepted Judge Primomo's recommendation. Judge Prado rejected the arguments raised by the government for the same reasons given by Judge Primomo. In addition, Judge Prado stated that he would not hear evidence regarding the state trial judge's mistaken beliefs regarding the effect of the nunc pro tunc judgment. Judge Prado noted:

> As evidence in support of the contention that the judge did not understand the effect of his action, the Government offers the affidavit of an officer of the state court, who testified that neither she nor the judge knew what effect the insertion of the language "consolidated for plea and sentencing" would have in federal court. However, the plain language of the nunc pro tunc judgment, as the Magistrate notes, reflects the state

judge's view that the cases should have been consolidated in 1991. Nothing in the Government's response gives the Court reason to believe otherwise, and the clarity of Vallez's motion for consolidation argues convincingly for another view—that the state judge did, or should have, understood the effect of granting the request. The Court will not engage in post hoc speculation as to whether this is the case.

Judge Prado granted Vallez's motion to vacate his sentence and ordered him to be brought before the court for resentencing.

The government subsequently filed a second supplemental response to Vallez's motion to vacate to which Vallez filed a response. Our record only contains Vallez's response and Judge Prado's order that was issued as a result. Vallez's response was filed on March 9, 1999.

Presumably, the government filed its second supplemental response after Judge Angelini entered the second amended nunc pro tunc judgment in the three causes. Judge Prado's order states that in its second response, the government produced evidence that, upon learning of Vallez's "manipulation" of the system, the state trial judge amended its judgments once again, this time "unconsolidating" the prior cases. The second amended judgments were entered on February 22, 1999. The judgments continue to recite that the sentences in each cause are to run concurrently; however, the last sentence of the judgments was changed to read, "It is further ordered that the defendant participate in the therapuetic community program. The court's amended judgment revoking supervision dated May 27, 1998 is hereby rescinded and set aside for all purposes. Case numbers 90CR4973, 90CR4974, and 90CR1302 were *not* consolidated by this court at any time for purposes of plea or sentencing." Vallez asserts in his response that the second amended judgments were obtained as a result of illegal ex parte communications between Judge Angelini and the Assistant United States

Attorney. Vallez contends that he had the right to be present at a hearing before the trial court could enter the second amended judgments.

On March 16, 1999, Judge Prado responded to the government's second supplemental response in a written order, stating:

> Plaintiff argues that the second amended judgment issued by the state court is invalid because it was based on ex parte communications between the federal government and the state judge and because it was issued without affording Plaintiff the opportunity for a hearing. There is considerable merit, under Texas law, to this argument. (Footnote— Moreover, this Court notes that, according to the Government, the state judge's decision was based on a finding that Plaintiff had "manipulated" the system. This finding, which Plaintiff arguably had a right to contest, is in direct contravention to this Court's assessment of the matter in its earlier order rejecting the argument.) In *Shaw v. State*, the Texas Court of Criminal Appeals stated that "[b]efore any unfavorable nunc pro tunc orders are entered the person convicted should be given an opportunity to be present for the hearing, represented by counsel, in order to accord him the process of law." *Shaw*, 539 S.W.2d 887, 890 (Tex.Crim.App.1976). Moreover, the convicted individual, under state law, has the right to appeal such a nunc pro tunc order. *See Homan v. Hughes*, 708 S.W.2d 449, 452 (Tex.Crim.App.1986) (en banc) (allowing mandamus where trial judge improperly prohibited appeal from nunc pro tunc order).
>
> However, it is not within this Court' authority to invalidate a state court judgment until Plaintiff's state court remedies have been exhausted. *See* 28 U.S.C. § 2254(b); *County Court of Ulster Co., N.Y. v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). In addition, in attacking a state court judgment in federal court, Plaintiff must fol-

low the procedure as outlined in 28 U.S.C. section 2254. Therefore, the Court does not, at this time, have the jurisdiction to rule on the validity of the state judge's second nunc pro tunc order.

Judge Prado stayed the order vacating Vallez's federal sentence pending Vallez's exhaustion of his state court remedies.

On March 24, 1999, Vallez filed his notice of appeal in each of the underlying causes, appealing the trial court's second amended judgments.

## DISCUSSION

 Vallez asserts that the second amended judgments should be reversed because they were entered without permitting him an opportunity to be present for a hearing and represented by counsel. The Texas Court of Criminal Appeals has held "[b]efore any unfavorable nunc pro tunc orders are entered the person convicted should be given an opportunity to be present for the hearing, represented by counsel, in order to accord him due process of law." *See Shaw v. State*, 539 S.W.2d 887, 890 (Tex.Crim.App.1976). Therefore, the trial court erred in entering the second amended judgments without a hearing.

 The State urges this court to focus on the propriety of the second amended judgments and ignore the trial court's deprivation of Vallez's constitutional rights in entering those judgments. There is precedent to support the State's request. In *Homan v. Hughes*, the Court of Criminal Appeals acknowledged that a defendant's constitutional rights were violated when the trial court entered an order "ex parte." *See Homan*, 708 S.W.2d 449, 454–55 (Tex. Crim.App.1986). Nevertheless, the Court concluded that ordering a hearing would serve no purpose if the outcome would not change since the trial court in all other ways properly changed the order. *See id.* Therefore, if we conclude that the second amended judgments were proper because the three causes were not consolidated,

then reversing the second amended judgments and remanding the causes for a hearing would be a "useless task," which the Court of Criminal Appeals has held that we are not required to do. *See id.*

Section 3.02 of the Texas Penal Code governs consolidation of cases. *See* Tex. Pen.Code Ann. § 3.02 (Vernon 1994). Section 3.02 provides that a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. *See id.* "Criminal episode" includes the commission of two or more offenses if the offenses are the repeated commission of the same or similar offenses. *See* Tex. Pen.Code Ann. § 3.01 (Vernon 1994). Vallez's offenses are for delivery and possession of controlled substances. We conclude that these are the same or similar offenses, and the State does not argue to the contrary.

■ When a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, the state is required to file written notice of the action not less than thirty days prior to the trial. *See* Tex. Pen.Code Ann. § 3.02 (Vernon 1994). The State contends that because it did not file any written notice, the cases were not consolidated. However, in *LaPorte v. State,* the Court of Criminal Appeals rejected this argument. *See LaPorte,* 840 S.W.2d 412, 414 (Tex.Crim.App.1992). The Court stated that noncompliance with the notice provision does not take the proceeding out of Chapter 3 or change it from a single criminal action involving consolidation of same criminal episode offenses. *See id.; see also Ex parte McJunkins,* 954 S.W.2d 39, 41 (Tex.Crim.App.1997) (noting *LaPorte* was correctly decided). A defendant is prosecuted in a single criminal action whenever allegations and evidence of more than one offense arising out of the same criminal episode are presented in a single trial or plea proceeding, whether pursuant to one charging instrument or several. *See id.*

The State next asserts that consolidation does not affect the trial court's ability to enter separate judgments. However, whether or not the trial court can enter separate judgments is not the issue and is not a proper consideration. The issue is whether the three causes were consolidated. Even if separate judgments were entered, the issue presented in the nunc pro tunc request, and the issue of concern in the federal court case, is whether the proceedings were consolidated.

Finally, the State argues that consolidation is defined and interpreted by state law as the means by which cases are brought to trial with the benefit to the defendant being the fact of concurrent sentences. The State asserts that a defendant does not have the right to require consolidation. The State concedes that the record indicates that the cases were heard and sentence was imposed in the three causes on the same dates. However, the State notes that the judgments do not refer to each other, and each cause has separate paperwork.

■ Offenses may be consolidated on a motion to revoke probation that were not consolidated at the time of a plea. *See Duran v. State,* 844 S.W.2d 745, 748 (Tex. Crim.App.1992) (must establish consolidation at time of plea and revocation to be entitled to concurrent sentences); *Medina v. State,* 7 S.W.3d 876, 879 (Tex.App.— Houston [1st Dist.] 1999, no pet.). Both the original plea proceeding and the revocation proceeding must be considered in determining whether causes have been consolidated.

■ The reporter's record from the revocation proceedings demonstrates that the causes were consolidated for purposes of revocation. If the record demonstrated that the trial court fully completed one plea proceeding, including the imposition of sentence, before starting another, then the plea proceedings would be considered not consolidated. *See Robbins v. State,* 914 S.W.2d 582, 583 (Tex.Crim.App.1996).

If the defendant enters separate pleas of guilty, but the trial court holds a consolidated punishment hearing, the proceedings are deemed consolidated. *See id.* at 583–84.

Because we do not have a reporter's record from the original plea proceedings, we cannot determine whether the plea proceedings were consolidated. The ambiguity in the record is the reason the trial court should not have entered the second amended judgments ex parte. Vallez should have been entitled to develop evidence at a hearing on which a decision regarding consolidation could be based. This is particularly true because the trial judge who entered the second amended judgments did not preside over the original plea proceedings.

### Conclusion

The trial court's judgments are reversed, and each of the causes are remanded to the trial court for further proceedings consistent with this opinion.